**HOMAN MFG. CO., Inc.,**
**Plaintiff-Appellee,**

v.

**H. A. LONG et al., Defendants-**
**Appellants,**

**No. 11782.**

United States Court of Appeals
Seventh Circuit.
Feb. 4, 1957.

Charles K. Rice, Asst. Atty. Gen., Frederic G. Rita, Atty., Tax Division, U. S. Dept. of Justice, Washington, D. C., Robert Tieken, U. S. Atty., Chicago, Ill., John N. Stull, Acting Asst. Atty. Gen., Robert N. Anderson, A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., Alexander O. Walter, John Peter Lulinski, Donald S. Lowitz, Asst. U. S. Attys., Chicago, Ill. for appellants.

George B. Christensen, Edward J. Wendrow, Chicago, Ill., William T. Kirby, Chicago, Ill., for appellee, Winston, Strawn, Smith & Patterson, Chicago, Ill., of counsel.

Before FINNEGAN, LINDLEY and SWAIM, Circuit Judges.

FINNEGAN, Circuit Judge.

A summary judgment obtained by plaintiff-corporate-taxpayer, Homan Manufacturing Co., Inc.,[1] against the defendant, [2] Director of Internal Revenue

---

1. Formerly The Shotwell Manufacturing Company, one of the defendants in the income tax prosecution (No. 52 CR 143) reviewed by our court and reported as United States v. Shotwell, 7 Cir., 1955, 225 F.2d 394. That case is now pending in the Supreme Court, Appellate Docket Nos. 9 and 10, filed October 17, 1955. No. 9 is the government's petition for certiorari and No. 10 is the conditional cross-petition for certiorari filed by the defendants.

2. H. A. Long, District Director for the Chicago Internal Revenue District, was substituted as defendant in place of Delbert J. Luippold, on plaintiff's motion, by order of this court on November 9, 1956.

Relevant portions of the judgment entered below, against the defendant, follow:

precipitated the latter's appeal. Plaintiff challenged the deficiency assessment underlying a Federal tax lien, 68A Stat. 779, I.R.C.1954, § 6322, 26 U.S.C.A. § 6322. Homan is subject to taxation and there is absent any question of statutory exclusion, 68A Stat. 911, I.R.C.1954, § 7701, 26 U.S.C.A. § 7701. In short, Homan launched a frontal attack on the assessment, involved in this appeal, for the purpose of freeing funds frozen under a notice of levy, dated September 15, 1955, served on several hundred Federal Savings & Loan Associations where plaintiff has moneys on deposit, and which contains this itemization:

| Period and Type of Tax | | Date of Assessment | Account No. |
|---|---|---|---|
| 1944 | DVEP | 9/15/55 | 55/30/9103900 |
| 1944 | EP | 9/15/55 | 55/30/9103900 |
| 1945 | DVEP | 9/15/55 | 55/30/9103901 |
| 1945 | EP | 9/15/55 | 55/30/9103901 |
| 1946 | Income | 9/15/55 | 55/30/9103902 |

| Period | Unpaid Balance | Statutory Additions | | Total |
|---|---|---|---|---|
| 1944 | $ 53,517.82 | P. | 26,758.91 | |
| | | I. | 33,716.23 | 113,992.96 |
| 1944 | 409,084.68 | P. | 250,993.15 | |
| | | I. | 257,723.35 | 917,801.18 |
| 1945 | 73,064.47 | P. | 36,532.24 | |
| | | I. | 41,646.75 | 151,243.46 |
| 1945 | 682,126.51 | P. | 353,277.69 | |
| | | I. | 388,812.11 | 1,424,216.31 |
| 1946 | 281,029.72 | P. | 140,514.86 | |
| | | I. | 143,352.16[1] | 564,869.74 |
| | | Total Amount Due | | $3,172,123.65 |

Roughly eleven days after that notice, Homan was granted a temporary restraining order directed to Ernest J. Sauber, then District Director of Internal Revenue. A "ninety-day" letter, dated November 14, 1955, was sent to and received by the taxpayer.[3]

"D. J. Luippold, his agents and servants and all persons purporting to act under or by virtue of a certain levy and assessments for internal revenue taxes and statutory additions thereto totalling $3,-172,123.65, dated September 15, 1955, and served upon * * * sundry defendants * * * be and hereby are permanently restrained and enjoined from receiving any funds, monies, shares or property of any kind, or taking any steps or proceedings to secure collection of the taxes, penalties and interest so assessed or purportedly assessed against Homan Mfg. Co., Inc. * * * D. J. Luippold, his agents and servants and all persons in the Internal Revenue Service to whom notice of this injunction shall come, are permanently enjoined and restrained from making any new assessment or levy against Homan Mfg. Co., based on the determination of Charles J. Mammel, alone, as described in the Findings of Fact and Conclusions of Law. * * * "

3. "U. S. Treasury Department
Internal Revenue Service
District Director
Chicago 2, Illinois
De 2-4500 Ex 580
Nov 14 1955
The Homan Mfg. Co., Inc.,
Formerly The Shotwell Mfg. Co.
c/o Cain & Culhane, Inc.
4545 Broadway
Chicago 40, Illinois
Gentlemen:
You are advised that the determination of your income tax liability for the taxable year ended December 31, 1946, discloses a deficiency of $280,916.41 and $140,458.22 in penalty, and that the de-

By a supplemental affidavit filed in opposition to plaintiff's motion for summary judgment, it is stated, by defense counsel that: "On or about February 10, 1956, The Homan Mfg. Co., Inc., * * * filed with the Tax Court of the United States a petition for review of the assessment complained of in this action." With what has been said thus far, we clear our opinion of several technical statutory steps which might otherwise be overlooked.

This appeal lends itself to three main divisions:

(I) The nature and purpose of jeopardy assessments and, (II) The unequivocal prohibitory language [4] found in § 7421 of the Internal Revenue Code of 1954, 68A Stat. 876, 26 U.S.C.A. § 7421, and (III) Allowance of plaintiff's motion for summary judgment. Normally jurisdictional questions demand primary attention. But under the circumstances of this case we think it advisable to first examine the jeopardy assessment phase.

## I.

■ Under § 6201 of the I.R.C. of 1954, 26 U.S.C.A. § 6201 the Secretary of the Treasury or his delegate make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by the Code and " * * * assess all taxes determined by the taxpayer or by the Secretary or his delegate as to which returns or lists are made * * *." That section is implemented by another provision, § 6204, embodying this general rule: "The Secretary or his delegate may, at any time within the period prescribed for assessment, make a supplemental assessment whenever it is ascertained that any assessment is imperfect or incomplete in any material respect." Section 6204 in the present Code contains no material change from existing law. Limitations on assessment and collection are governed by provisions, §§ 6501–6503, in Chapter 66 of the Code. Two other integral parts of the Code should also be noted: "§ 6202. * * * If the mode or time for the assessment of any internal revenue tax (including interest, additional amounts, additions to the tax, and assessable penalties) is not otherwise provided for, the

termination of your declared value excess-profits tax liability for the taxable years ended December 31, 1944 and December 31, 1945, discloses deficiencies aggregating $76,092.29 and penalties aggregating $38,046.15, and that the determination of your excess profits tax liability for the taxable years ended December 31, 1944 and December 31, 1945, discloses deficiencies aggregating $1,019,-177.74 and penalties aggregating $568,-254.13, and that the determination of your income tax liability for the taxable year ended December 31, 1945, discloses an over-assessment of $7,940.91, as shown in the statement attached. Assessment of the above-mentioned deficiencies and penalties has been made under the provisions of the internal revenue laws applicable to jeopardy assessments.

In accordance with the provisions of existing internal revenue laws, notice is hereby given of the deficiencies and penalties mentioned.

Within 90 days from the date of the mailing of this letter you may file a petition with The Tax Court of the United States, at its principal address, Washington 4, D. C., for a redetermination of the deficiencies and penalties. In counting the 90 days you may not exclude any day unless the 90th day is a Saturday, Sunday or legal holiday in the District of Columbia in which event that day is not counted as the 90th day. Otherwise Saturdays, Sundays and legal holidays are to be counted in computing the 90-day period."

4. " * * * Prohibition of suits to restrain assessment or collection. (a) Tax. —Except as provided in sections 6212 (a) and (c), and 6213(a), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court."

In its Report accompanying H.R. 8300 (A Bill to Revise the Internal Revenue Laws of the United States) the Senate Finance Committee stated: "This section [§ 7421], which is identical with that of the House bill, contains no material change in existing law, except that subsection (b) is extended to conform to the extended authority, in section C901 (a) (2), to assess transferee liability." Sen.Rep. No. 1622, 83d Cong., 2d Sess. 610 (1954), U.S.Code Cong. and Adm. News 1954, p. 5260.

Secretary or his delegate may establish the same by regulations," and "§ 6203. * * * The assessment shall be made by recording the liability of the taxpayer in the office of the Secretary or his delegate in accordance with rules or regulations prescribed by the Secretary or his delegate. Upon request of the taxpayer, the Secretary or his delegate shall furnish the taxpayer a copy of the record of the assessment." In other words, in this case, by filing its return plaintiff's corporate predecessor made, as do most taxpayers, its self-assessment. If the initial return is accepted, income tax is paid and collected on the basis of a taxpayer's own assessment, made pursuant to the relevant statutory provisions and regulations. After filing a tax return and on dispute, but before ultimate disposition there are various administrative steps and procedures within the structure of the Internal Revenue Service. But even during the period of such administrative activity the Commissioner may invoke the statutory weapon, jeopardy assessment, for the purpose of insulating the collection of the taxes, claimed of a particular taxpayer, against loss or prejudice. See, e.g., Brown Wheeler Co. v. Commissioner, 1930, 21 B.T.A. 755.

Authority for making jeopardy assessments is conferred by Congress through § 6861, I.R.C.1954, 68A Stat. 834, 26 U.S.C.A. § 6861: "If the Secretary or his delegate believes that the *assessment or collection* of a deficiency, as defined in section 6211, *will be jeopardized by delay,* he shall, notwithstanding the provisions of section 6213(a), immediately assess such deficiency (together with all interest, additional amounts, and additions to the tax provided for by law), and notice and demand shall be made by the Secretary or his delegate for the payment thereof." (Italics supplied.) Section 6211, of the 1954 Code, set out in the marginal note [5] defines "deficiency."

While there are some statutory limitations on the time for assessments and collections, under § 6501(c) (1) and (2) no period of limitations is provided where there is a false or fraudulent return, or a willful attempt to evade tax.

Congress gave the Secretary, or his delegate, a stop-gap remedy under § 6861. Like all first aid measures it is subject to abuse or improper use. The Code does provide interim relief for a taxpayer if he is able to give a bond under § 6863 [6] and, of course, a review of the assessment is available in the tax

---

5. "* * * Definition of a deficiency. (a) In general.—For purposes of this title in the case of income, estate, and gift taxes, imposed by subtitles A and B, the term 'deficiency' means the amount by which the tax imposed by subtitles A or B exceeds the excess of—(1) the sum of (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus (B) the amounts previously assessed (or collected without assessment) as a deficiency, over—(2) the amount of rebates, as defined in subsection (b) (2), made." 68A Stat. 770, 26 U.S.C.A. § 6211.

6. "* * * Stay of collection of jeopardy assessments. (a) Bond to stay collection.—When a jeopardy assessment has been made under section 6861 or 6862, the collection of the whole or any amount of such assessment may be stayed by filing with the Secretary or his delegate, within such time as may be fixed by regulations prescribed by the Secretary or his delegate, a bond in an amount equal to the amount as to which the stay is desired, conditioned upon the payment of the amount (together with interest thereon) the collection of which is stayed, at the time at which, but for the making of the jeopardy assessment, such amount would be due. Upon the filing of the bond the collection of so much of the amount assessed as is covered by the bond shall be stayed. The taxpayer shall have the right to waive such stay at any time in respect of the whole or any part of the amount covered by the bond, and if as a result of such waiver any part of the amount covered by the bond is paid, then the bond shall, at the request of the taxpayer, be proportionately reduced. If any portion of the jeopardy assessment is abated, the bond shall, at the request of the taxpayer, be proportionately reduced."

court. We are not now saying that either the bond section or tax court review are the panacea for all ills suffered when a jeopardy assessment is utilized by the government.

Senate Report No. 730 accompanying the bill (H.R. 6402) providing for abatement of jeopardy assessments, approved August 14, 1953 and now § 6861(g) contains the following cogent observations: [7]

"H.R. 6402 specifically authorizes the Secretary of the Treasury to abate so-called jeopardy assessments when the Secretary determines that jeopardy does not exist.

"Under existing law if the Bureau of Internal Revenue believes that ultimate collection of a tax is in danger, it may make a so-called jeopardy assessment. *This is an arbitrary assessment designed to get control of available assets of the taxpayer pending final determination of the liability, if any.* At the present time, once such an assessment has been made, *the Bureau believes that it does not have authority to revoke* the assessment even though it finds that a mistake has been made and that there is no danger of losing the tax. As a result, the Bureau has had in the past and now has cases before it in which *arbitrary* jeopardy assessments, *which may be greatly in excess of any tax finally found to be due, are a cause of financial embarrassment and danger to the taxpayer involved. The Bureau believes it is unable to do anything about such cases even though it agrees that there would in fact be no risk* to the revenue in following normal procedures.

"This bill simply permits the revocation of a jeopardy assessment whenever it appears *that there is in*

*fact no danger of losing* any tax which may be due. Enactment of H.R. 6402 is recommended by the Treasury Department.

"The bill will apply only to assessments outstanding at the date of enactment and assessments thereafter made." (Emphasis ours.)

Section 6861(g) currently effective provides, *inter alia:*

"The Secretary or his delegate *may abate* the jeopardy assessment if he finds that jeopardy does not exist. Such abatement may *not* be made after a *decision* of the Tax Court in respect of the deficiency has been rendered or, if *no petition* is filed with the Tax Court, after the expiration of the period for filing such petition." (Emphasis added.)

Neither party to the appeal now under review mentioned § 6861(g). Yet we think, when it is read against the candid Senate Report, it is clear that jeopardy assessments are of their nature and purpose arbitrary—if utilizing figures unaudited to the last penny is the equivalent of the word "arbitrary." Of course saddling an exempt taxpayer with a jeopardy assessment, for example, would be arbitrary. But we find nothing in the Code requiring that jeopardy assessments be based upon computations fitted together with the accuracy of Dutch tiles. The rapidity of action inherent in insulating collections against loss by *delay* hardly suggests the leisure of chartered accountants over their books and tea. Of course, there is a background history here of continuous and prolonged audits, yet that is not the sole criteria for measuring the current jeopardy assessment.

■ We also think the district court should consider the question of parties in light of § 6861(g) since a government

---

7. Sen.Rep. No. 730, 83rd Cong., 1st Sess. (1953); H.R. No. 993, 83rd Cong., 1st Sess. (1953)—the Senate Report virtually repeating that of the House is in 2 U.S.Code Congressional and Administrative News 2398 to 2399 (1953).

See also: Regs. 105, Section 81.74, 1955–1: T.D. 6126, Cum.Bull. 466 (1955), 26 Code Fed.Regs. §§ 39.273, 39.- 273–1 (1956), Fed.Tax Regs. §§ 39.273, 39.273–1 (U.S.Code Cong. & Adm.News, 1956).

official has power to abate the assessment even after the levy has been made.

There is little doubt but what a jeopardy assessment is a statutory label for the sovereign's stranglehold on a taxpayer's assets. But we are merely tracing a statutory pattern and round out our view of this aspect of the Code by pointing up §§ 7403(a), 6331, 6332(a) and (b), and 6335 governing foreclosure and enforcement of liens and suits against persons served with notices of levy.

## II.

By his motion and answer the District Director persistently questioned the district court's jurisdiction, though recognizing that prevailing case law has, on occasion, paliated the strictures Congress enacted in § 7421. While a jurisdictional challenge meets us at the outset it can be resolved only by determining whether plaintiff's case qualifies for relief under some head of equity jurisdiction. Precedent reflects a case to case approach in situations where courts have previously resolved issues arising under § 7421 and its antecedent enactments. The section has a long pedigree; its purpose has been frequently explained.[8] When compelling factual reasons were established, in various earlier cases, federal courts have by-passed § 7421, taken jurisdiction and exercised their equity powers.

Both parties in this appeal point up the decision pivoting on inapplicability of § 7421 (formerly R.S. § 3224) to the particular facts before the court when *Miller v. Standard Nut Margarine Co.*, 1932, 284 U.S. 498, 52 S.Ct. 260, 264, 76 L.Ed. 422, was decided. That case is a singular example when "by reason of * * * special and extraordinary facts and circumstances, section 3224 [now § 7421] [did] not apply." The suit leading up to the *Miller* opinion was commenced December 26, 1929. About seven years earlier another manufacturer prevailed over the Collector of Internal Revenue in a case reported as Hig-

---

8. Allen v. Regents, 1938, 304 U.S. 439, 58 S.Ct. 980, 82 L.Ed. 1448, involving admission tax to stadium owned by corporate instrumentality of the State of Georgia; Graham v. DuPont, 1923, 262 U.S. 234, 43 S.Ct. 567, 67 L.Ed. 965; Bailey v. George, 1922, 259 U.S. 16, 42 S.Ct. 419, 66 L.Ed. 816; Hill v. Wallace, 1922, 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822; and see 1921, 257 U.S. 310, 42 S.Ct. 168, 66 L.Ed. 253 and 257 U.S. 615, 42 S.Ct. 96, 66 L.Ed. 398 for interim orders, government virtually consented to temporary injunction; Dodge v. Brady, 1916, 240 U.S. 122, 36 S.Ct. 277, 60 L.Ed. 560; Dodge v. Osborn, 1916, 240 U.S. 118, 36 S.Ct. 275, 60 L.Ed. 557; Rampton v. Fox, 10 Cir., 1956, 235 F.2d 883 relief refused; Monge v. Smyth, 9 Cir., 1956, 229 F.2d 361 relief denied; Hudson v. Crenshaw, 4 Cir., 1955, 224 F.2d 324 relief disallowed; Jewel Shop of Abbeville, S. C. v. Pitts, 4 Cir., 1955, 218 F.2d 692 no relief; Holland v. Nix, 5 Cir., 1954, 214 F.2d 317 relief granted to transferee of transferee; Voss v. Hinds, 10 Cir., 1953, 208 F.2d 912 no relief; Shelton v. Gill, 4 Cir., 1953, 202 F.2d 503 transferee liability, judgment dismissing complaint for equitable relief reversed and remanded; Yoshimura v. Alsup, 9 Cir., 1948, 167 F.2d 104, coercive and fraudulent threats to inter Japanese person of limited education and forcing him to sign statement admitting fraud on government, constituted exceptional circumstances warranting relief; Sturgeon v. Schuster, 10 Cir., 1947, 158 F.2d 811 extraordinary circumstances absent; Reams v. Vrooman-Fehn Printing Co., 6 Cir., 1944, 140 F.2d 237 relief denied; John M. Hirst & Co. v. Gentsch, 6 Cir., 1943, 133 F.2d 247 partnership sought relief claiming non-liability, reversed and remanded for consideration of complaint. Burke v. Mingori, 10 Cir., 1942, 128 F.2d 996 opinion contains collection of cases on point; Midwest Haulers v. Brady, 6 Cir., 1942, 128 F.2d 496 plaintiff's certificate of convenience and necessity as a common carrier jeopardized, Motion to dismiss admitted facts well pleaded, relief warranted; Concentrate Mfg. Co. v. Higgins, 2 Cir., 1937, 90 F.2d 439.

Communist Party U. S. A. v. Moysey, D.C.N.Y.1956, 141 F.Supp. 332; Sanders v. Andrews, D.C.Okl.1954, 121 F.Supp. 584 reversed on other grounds, Sanders v. C. I. R., 10 Cir., 1955, 225 F.2d 29; Long v. Kelly, D.C.Ala.1951, 100 F.Supp. 235 exceptional circumstances found; Acklin v. Peoples Sav. Ass'n, D.C.Ohio 1923, 293 F. 392, exempt association, extraordinary circumstances present.

gins Mfg. Co. v. Page, D.C.R.I.1924, 297 F. 644; The Rhode Island District Court found that Higgins' product was not oleomargarine or taxable as such. As a result the Commissioner, with the approval of the Secretary of the Treasury, promulgated the Higgins' case as Treasury Decision 3590 "thus informing all concerned that the product was not subject to the tax." 284 U.S. 498, 505, 52 S.Ct. 260, 261. Several other federal courts subsequently granted relief to manufacturers who sought relief against the Collector who asserted taxability of products identical to the one involved in Higgins. After all this litigation the Commissioner, by letter, answered an inquiry made by the Standard Nut Margarine Co., advising it that its "product would not be taxable as oleomargarine." The Miller background can now be described by repeating this passage from the opinion, 284 U.S. 498, 505, 52 S.Ct. 260, 261: "Relying on the decision in Higgins Mfg. Co. v. Page, D.C., 297 F. 644, Treasury Decision 3590, the Deputy Commissioner's letter to the institute [of Margarine Manufacturers] and the injunctions * * * [Standard Nut Margarine Company] believed the product which it proposed to manufacture and sell would not be taxable as oleomargarine, and, upon receipt of [Commissioner's] letter, commenced manufacture and sale of the product." Afterward the product of Standard Nut Margarine was declared taxable by the Commissioner who demanded and threatened to collect a tax on it. "The enforcement of the Oleomargarine Act * * * would impose a tax that [Standard Nut Margarine Co.] would be unable to pay, would subject it to heavy penalties and the forfeiture of its plant, together with the materials and manufactured product on hand, and would destroy its business." 284 U.S. 498, 506–507, 52 S.Ct. 260, 262. We might also point out the stronger detailed factual background, of the Miller case, reported as Miller v. Standard Nut Margarine Co. of Florida, 5 Cir., 1931, 49 F.2d 79 where the Court of Appeals affirmed the decree perpetually enjoining the collector. Affirming the Fifth Circuit's decision, the majority of Justices in the Supreme Court said:

"Independently of, and in cases arising prior to, the enactment of the provision * * * which became Rev.St. § 3224 [now § 7421], this court, in harmony with the rule generally followed in courts of equity, held that *a suit will not lie to restrain the collection of a tax upon the sole ground of its* illegality. The principal reason is that, as courts are without authority to apportion or equalize taxes or to make assessments, such suits would enable those liable for taxes in some amount to delay payment or possibly to escape their lawful burden, and so to interfere with and thwart the collection of revenues for the support of the government. And this court likewise recognizes the rule that, in cases where complainant shows that *in addition* to the *illegality* of an exaction in the guise of a tax *there exist special and extraordinary circumstances* sufficient to bring the case within some acknowledged head of equity jurisprudence, a suit may be maintained to enjoin the *collector.* [Citing.] Section 3224 is declaratory of the principle first mentioned and is to be construed as near as may be in harmony with it and the reasons upon which it rests. [Citing.] The section does not refer specifically to the rule applicable to cases involving exceptional circumstances. The general words employed are not sufficient, and it would require specific language undoubtedly disclosing that purpose, to warrant the inference that Congress intended to abrogate that salutory and well-established rule. This court has given effect to section 3224 in a number of cases. [Citing.] It has never held the rule to be absolute, but has repeatedly indicated that extraordinary and exceptional

circumstances render its provisions inapplicable." 284 U.S. 498, 509–510, 52 S.Ct. 260, 263. (Italics ours.)

■ For the Miller case principles to become operative "special and extraordinary circumstances" must combine with illegality. After all the putative taxpayer seeking relief in the Miller case came into the district court armed with several judicial adjudications,[9] an official letter, and Treasury Decision unanimously proclaiming non-taxability of the type of product produced by it. Relying upon that array of rulings for the prediction that its product was non-taxable under the Oleomargarine Act of August 2, 1886, 24 Stat. 209, as amended by the Act of May 9, 1902, 32 Stat. 194, the manufacturer invested capital and embarked on an enterprise—doomed to strangulation by administrative caprice, hence equitable relief was granted. The proposed tax was illegal. The Miller circumstances were exceptional even to the most jaundiced eye. From the Supreme Court's opinion it appears that "At the trial [Standard Nut Margarine Co.] introduced oral and documentary evidence, together with specimens of the product sought to be taxed."

### III.

But we are reviewing a case disposed of on summary judgment. Even if the district court has power to grant equitable relief the question of the correctness in doing so by summary judgment is a threshold one. Summary judgment procedure enables district judges to nip in the bud litigation which would wilt, if the case went forward to a trial on the merits, because there was no genuine issue as to any material fact.[10]

To be sure the language of Rule 56(c), Fed.Rules Civil Procedure, 28 U.S.C.,

authorizes a judgment to be "rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." But that is a deceptively simple statement for application in the setting of this case because depriving the defendant of trial hinges on whether " 'there is the slightest doubt as to the facts.' " Arnstein v. Porter, 2 Cir., 1946, 154 F.2d 464, 468; Campana Corporation v. Harrison, 7 Cir., 1943, 135 F.2d 334.

Arguing the propriety of the summary judgment in its favor, Homan relies on a passage from our earlier decision in Albert Dickinson Co. v. Mellos Peanut Co., 7 Cir., 1950, 179 F.2d 265. However, there the summary judgment was reversed and the cause remanded to the district court, and Chief Judge Duffy, delivering the opinion, suggested cautious invocation of Rule 56.

To support its complaint for injunctive relief, Homan sought and obtained a deposition beginning on February 28, 1956, of the discovery witness, Charles J. Mammel. Mr. Mammel, born in 1890, currently employed as a revenue agent in the Internal Revenue Service, had commenced working for the Service on February 2, 1920. He was a government witness in the prosecution partially reviewed and reported as United States v. Shotwell, 7 Cir., 1955, 225 F.2d 394. One of the affidavits presented on Homan's behalf referred to, and quoted from, another affidavit made by a Special Assistant to the Attorney General, filed April 6, 1953, by the government in connection with its motion for a continuance in that criminal trial. Portions of this latter affidavit relevant here follow:[11]

---

9. On taxability of the product involved.

10. Sartor v. Arkansas Natural Gas Corporation, 1944, 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967; Prepo Corp. v. Pressure Can Corp., 7 Cir., 1956, 234 F.2d 700; Warner v. First National Bank of Minneapolis, 8 Cir., 1956, 236 F.2d 853;

Preston v. Aetna Life Ins. Co., 7 Cir., 1949, 174 F.2d 10.

11. The affidavit of Homan's counsel (part of an amendment to its motion for summary judgment) is in the Appendix to Appellant's Brief, filed in the instant appeal, at pages 397 to 399. The cross-

"That Charles J. Mammel, CPA, age 63, is employed by the Bureau of Internal Revenue as a revenue agent and as such was assigned as chief revenue agent in the investigation of this cause.

"That on Sunday, March 29, 1953, at approximately 9:00 o'clock P.M., while in the presence of the affiant and while engaged in the preparation of the trial of this cause, Mr. Mammel suffered a complete physical and mental breakdown.

"That since that date until the date hereof Mr. Mammel has been confined to his home, in bed, and has been receiving care and treatment from a Practitioner.

"That on the date hereof, contrary to instructions but in view of the imminence of this case, Mr. Mammel attempted to return to his office but suffered a relapse, and is again confined to his home.

"It is further averred that Mr. Mammel, in view of his investigative information obtained in the past four years, is an indispensable witness and his presence is necessary for the conduct of the trial of this case."

Homan claims it was entitled to judgment below as a matter of law because the assessment of September 15, 1955 is arbitrary, capricious and violative of its right to due process. Taxpayer's reasoning underlying this critical aspect of the appeal runs roughly in this fashion. Mr.

Mammel's incapacity reflected in the quoted passages, from the 1953 affidavit, is presumed to continue until the contrary has been demonstrated. Moreover, a variety of instances underscored by plaintiff's counsel, arising during the taking of Mr. Mammel's deposition, in 1956, allegedly manifest a mental state of mind inconsistent with such a contrary demonstration. Mr. Mammel's figures, according to Homan, constitute the basis of the assessment against it. But, in Homan's sights, some of the significant figures are unreliable since Mr. Mammel displayed little, if any, support for them while being interrogated in the discovery proceedings. Throughout that examination of the Agent, by Homan's counsel, the government sporadically invoked privilege as a bar to further questioning on phases of the challenged assessment. That discovery proceeding still remains uncompleted. Homan's motion for a partial release of funds blanketed by the jeopardy assessment was pending currently with the discovery proceeding of Mr. Mammel. After accumulating a lengthy series of questions propounded to and answers elicited from, the Agent, Homan in substance suggested to the district judge that enough of a demonstration had been made, cutting ground from under the assessment to permit the judge to act on either or both of the motions—for partial release of funds and summary judgment. Without ruling on the former pleading, summary judgment was allowed on the incompleted deposition.

---

tie to the government Attorney's earlier affidavit is on page 398. The full affidavit, filed by the government, April 6, 1953, and partially quoted in our opinion, appears on pages 551–552, Transcript of Record in Nos. 11108, 11109, 11110, 11111, United States v. Shotwell Manufacturing Company.

It was said of Mr. Mammel, when Mr. Cunningham, Assistant United States Attorney, was urging Judge Nordbye to grant the government a continuance in the criminal trial:

"He [Mr. Mammel] has worked on the case, as I said, a great many years and he is the technician in the case. We do have the special agent or investigators

of facts, but the technical matters, all those of revenue agents, it is he that has made widespread investigation, both of the various ventures that one of our principal witnesses was engaged in and he is also the one man who can testify and be of technical assistance to the Government insofar as the records of the Shotwell Manufacturing Company are concerned; and in view of his illness, it is my feeling that his absence will affect the case materially, and I feel that the Government should not go forward at this time in his absence." 2 Transcript of Record 554–555, U. S. v. Shotwell Mfg. Co., Nos. 11108, 11109, 11110, 11111.

## IV.

Granting relief despite the statutory bar mandated by § 7421 would entail exercise of the district court's general equity jurisdiction. To deviate from that clear Congressional direction could be countenanced, if at all, only by adhering to case precedent. Congress left § 7421 (a) undisturbed in its sweeping revision of the Code during 1954. Assuming, without deciding, that there is enough sound case law authorizing equitable relief in the face of § 7421, we think peremptory relief through the vehicle of summary judgment was incorrect. Because if the court has equitable powers, regardless of § 7421, they are delineated by a handful of prior opinions making it necessary to determine if the Homan facts come within their ambit. For we think the judicial rubrics already inserted in § 7421 cannot wisely be multiplied.

Homan, in short, wants funds released urging that it cannot await review by the tax court of the basic assessment, coupled with its financial inability to furnish the statutory bond. Of course the tax court is the proper forum in which to contest this assessment and the only way such review could be circumvented is if the district court wields equitable powers potent enough to strike down the assessment. Proper regard for the salient principles lying behind the heirarchy of courts designated by Congress to deal with tax matters requires a cautionary mood in this case. Actually Homan bases its case on the theory that the assessment is so arbitrary and capricious that it is illegal, and for that reason warrants equitable relief. But we think an incomplete deposition, wanting in several important respects, fails to automatically obliterate the assessment so that permanent injunctive relief can flow from summary judgment.

After reading this record we think the defense actually and in good faith controverted some critical allegations made in Homan's complaint.[12] It must be remembered that § 6861 is authorized when the collection of a deficiency "will be jeopardized by delay." Exigency is the matrix of that section. The defendant's answer contains affirmative allegations related to the "delay" phase of § 6861.

It is clear that the use of a jeopardy assessment is a discretionary prerogative of the Secretary or his delegate. Under § 6861 the government official has power to act when he *believes* collection will be jeopardized by delay. His belief is justification for placing the statutory clamp on a taxpayer's assets. We think defendant's answer to the complaint, and brief, can be reduced to the following summary. Statutory assessments under the Code enjoy a presumption of validity.[13] Homan as a business corporation

---

2. E. g. Allegations in the fifteenth paragraph of the complaint are:

"15. Plaintiff alleges that it is informed and believes that it owes no additional taxes for 1944, 1945 and 1946, and that the assessment of September 15, 1955, reflected in Exhibit "B" annexed hereto, is wholly arbitrary, capricious, unjustified, and is many fold any sum heretofore suggested by Treasury Agents. Plaintiff shows the assessment of September 15, 1955 was made after the time for assessment had expired by limitation of law with the exception that if fraud be established by the Commissioner of Internal Revenue he has power to assess additional taxes beyond the usual limitations period. Plaintiff shows that fraud is never presumed and that the assessment of September 15, 1955, occurring after the running of the usual statutory period, is without *prima facie* validity and is wholly lacking in validity unless and until, if, ever, after hearing an adequate showing of fraud is made."

To which defendant answered:

"15. Denies each and every allegation contained in Paragraph 15 of the complaint. Avers that the plaintiff purports to have dispersed at least $527,384.12 for alleged tax litigation expenses from 1950 through about September 15, 1955; states that if as plaintiff alleged in Paragraph 12 its assets totalled approximately $1,114,087.07 as of September 15, 1955, this sum is obviously insufficient to pay the tax liabilities for the years 1944 to 1946, inclusive, aggregating $3,172,-123.65."

13. Various bookkeeping records, including the Assessment Certificate, of the Chica-

is well within the taxability provisions of the Code and for that reason this appeal is distinguishable from Miller especially because, as defendant puts it: "that it [Homan] might be liable for taxes is not beyond the realm of possibility." Moreover, defendant insists there is a genuine issue of fact lurking in the case because Homan has failed in making any showing that it, in fact, owes no taxes for the calendar years in question.

A summary judgment proceeding is not a substitute for a trial, but rather a judicial search for determining whether genuine issues exist as to material facts. Hurd v. Sheffield Steel Corp., 8 Cir., 1950, 181 F.2d 269, 271, Dewey v. Clark, 1950, 86 U.S.App.D.C. 137, 180 F.2d 766, 772. The lower court cannot try out factual issues on a motion for summary judgment because once such an issue is found the court's function on that aspect of the case ends. There is statutory power to make a jeopardy assessment and levy in this case. The defense responded with its statutory assessment to plaintiff's allegations. The facts playing in, on or about the assessment are in issue and their presence is enough to prevent a summary judgment.

We are sending the case back without further comment on the issue or issues of fact necessitating our reversal. When litigants are to proceed again at the trial level with a cause after our review it is essential that the case arrive below without furnishing fuel to fire up preconceived notions on the fact issues that will need disposition at a trial on the merits. All we have decided is that summary judgment for plaintiff was improvidently granted.

The decree and judgment of the District Court entered June 14, 1956,

brought here for review, must be vacated and the cause remanded to that court for proceedings not inconsistent with this opinion. It is so ordered. Judgment of the District Court vacated and the cause remanded with directions.

go, Illinois Collection District are attached to the affidavit in opposition to the motion for summary judgment. Harold M. Haas, Assessment officer, appears as the signatory on the Certificate which reads: "I hereby certify that I have made assessments of taxes, penalties, and interest of the above classification specified in these lists, and that the amount stated above [$3,172,123.65] is chargeable to me, subject to such correction and subsequent inquiries and determinations in respect thereto may indicate to be proper." Haas was not a witness below.