Carole M. HARTLEY, Plaintiff,

v.

WISCONSIN BELL, INC., Defendant.

No. 94–C–599.

United States District Court,
E.D. Wisconsin.

June 5, 1996.

Kersten & McKinnon by E. Campion Kersten, Milwaukee, WI, for Plaintiff.

Winston & Strawn by William G. Miossi, Chicago, IL, Foley & Lardner by Bernard J. Bobber, Milwaukee, WI, for Defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

On May 5, 1994, the plaintiff, Carole M. Hartley, filed a complaint in the circuit court for Milwaukee County alleging a violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., ["ADEA"] and a state law claim for intentional infliction of emotional distress. By notice dated June 7, 1994, the defendant, Wisconsin Bell, Inc. ["WBI"], removed the action to federal court noting that this court had original jurisdiction over the action.

Presently before the court is the defendant's motion for summary judgment under Rule 56(c), Federal Rules of Civil Procedure, which seeks dismissal of the plaintiff's action in its entirety. The defendant has also submitted a "Rule 6.07 Motion to Amend Witness List in Defendant's Pretrial Report." The plaintiff has filed two motions: (1) a "Motion to Strike Defendant's Reply Brief on Summary Judgment" and (2) a "Motion to Preclude Previously Undisclosed Witnesses from Testifying at Trial."

As a preliminary matter, the court notes that the plaintiff affirmatively states in her brief that she does not oppose the defendant's motion for summary judgment as it relates to her state law claim for intentional infliction of emotional distress. Accordingly, the defendant's motion will be granted as to that claim.

## I. PLAINTIFF'S MOTION TO STRIKE

The plaintiff filed a "Motion to Strike Reply Brief on Summary Judgment" claiming that (1) it introduces a new argument not raised in the defendant's principal brief, (2) it includes affidavits not submitted with its principal brief, (3) it exceeds the 15-page limitation imposed on reply briefs under Local Rule 6.01(c), and (4) it cites to and includes a copy of an unpublished decision of the court of appeals for the seventh circuit.

The motion practice established under the local rules of the eastern district of Wisconsin contemplates that in all motions there will be three submissions: (1) the motion, along with "supporting brief and, when necessary affidavits or other documents," Local Rule 6.01(a); (2) "an answering brief and, when necessary affidavits or other documents," Local Rule 6.01(b); and (3) a reply brief which shall be "limited to matters in reply," Local Rule 6.01(c). Local Rule 6.01(c) specifically limits the movant in responding to the non-movant's answering brief and affidavits or other documents to a reply *brief*; it does not permit the movant to file additional affidavits or other documents. *Boustead v. Barancik,* 151 F.R.D. 102, 106–107 (E.D.Wis.1993) (Gordon, J.). In addition to the summary judgment procedures identified in Local Rule 6.05, motions for summary judgment are to comply with Local Rule 6.01. *See* Local Rule 6.05.

Along with its reply brief, the defendant submitted the following items: (1) supplemental affidavit of Albert Raymond Kehm; (2) affidavit of William G. Miossi; (3) excerpts from the plaintiff's deposition; and (4) excerpts from the deposition of Dominick Vento. None of these materials had been submitted previously by the defendant or the plaintiff.

At no time did the defendant seek leave of this court to file the materials which accompanied its reply brief. As to the deposition testimony of Mr. Vento, the court recognizes that the defendant included that information with its reply brief because the plaintiff had neglected to attach that portion of Mr. Vento's deposition despite referring to it in her response.

■ The defendant did not seek or receive leave of court to include the supplemental affidavit of Mr. Kehm, the affidavit of Attorney Miossi or the additional deposition testimony of Ms. Hartley and has failed to identify a justification for the late submission of such information. Accordingly, these documents, identified as exhibits B, D and F of the defendant's reply brief, were improperly submitted and will be stricken.

■ The plaintiff also argues that the defendant's brief should be stricken in its entirety because the brief along with the attached exhibits exceeds the 15–page limit under Local Rule 6.01(c). This argument is without merit because Local Rule 6.01(c) expressly states that "reply briefs shall not exceed 15 pages *exclusive* of pages containing the statement of facts, the proposed findings of fact as indicated in rule 6.05, exhibits, and affidavits." (Emphasis added.) The defendant's reply *brief* consists of only 12 pages, and therefore, does not violate the 15–page limitation of Local Rule 6.01(c). Moreover, the defendant's inclusion of an index of uncontested facts which references previous proposed findings as an exhibit to its reply brief is not inconsistent with the summary judgment procedures identified in Local Rule 6.05.

■ The plaintiff's assertion that the defendant's reply brief should be stricken because it is not limited to matters in reply as required under Local Rule 6.01(c) is equally without merit. The argument in defendant's reply brief concerning Ms. Hartley's low rankings is in direct response to the argument that Ms. Hartley herself raised in her brief in response to the defendant's motion for summary judgment at pp. 6–9 and 19.

■ Ms. Hartley's contention that the defendant violated Circuit Rule 53(b)(2)(iv) by citing to and including a copy of an unpublished decision of the court of appeals for the seventh circuit—*Wittwer v. Maclean Hunter Publishing Co.*, Appeal No. 95–1699, 1995 WL 767091—is persuasive. Circuit Rule 53(b)(2)(iv) provides that, with exceptions not relevant here, unpublished orders "shall not be cited or used as precedent ... in any federal court within the circuit in any written document...." Therefore, the unpublished case, attached as exhibit G to the reply brief, will be stricken.

Accordingly, the plaintiff's motion to strike the defendant's reply brief will be granted to the extent that exhibits B, D, F and G attached to the reply brief will be stricken; in all other respects, the plaintiff's motion to strike the defendant's reply brief will be denied.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment will be granted when there are no genuine issues of material facts and the movant is entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure. In order to succeed on a motion for summary judgment, the movant must show the following: (1) no genuine issue of material fact exists; and (2) its entitlement to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Only "genuine" issues of "material" fact will defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

As defined by the United States Supreme Court, "material" facts are those facts which, under the governing substantive law, "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. A dispute over such facts is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

Upon a finding that a genuine issue of material fact exists, the court must deny the motion for summary judgment and let the matter proceed to trial. *See Devex Corp. v.*

*Houdaille Industries, Inc.,* 382 F.2d 17, 21 (7th Cir.1967); *Homan Mfg. Co. v. Long,* 242 F.2d 645, 656 (7th Cir.1957).

## III. UNDISPUTED FACTS

■ Pursuant to Local Rule 6.05(a), the defendant included with its motion for summary judgment proposed findings of fact which it believed constituted the factual propositions upon which there is no genuine issue of material fact. It also included references to affidavits and other supporting materials to support the proposed facts. Ms. Hartley responded by contesting many of the factual propositions offered by the defendant. Local Rule 6.05(b)(1). However, Ms. Hartley did not present any additional factual propositions as contemplated under Local Rule 6.05(b)(2). In considering a motion for summary judgment, the court may conclude that there is no genuine issue of material fact as to any proposed finding of fact to which no proper response has been set out. *Stewart v. McGinnis,* 5 F.3d 1031, 1034 (7th Cir. 1993), *cert. denied,* 510 U.S. 1121, 114 S.Ct. 1075, 127 L.Ed.2d 393 (1994); *National Acceptance Co. of America v. Regal Products, Inc.,* 838 F.Supp. 1315, 1317 (E.D.Wis.1993); Local Rule 6.05(c).

■ To survive the defendant's motion for summary judgment, Ms. Hartley was obliged to counter the defendant's affidavits and other evidence with materials of evidentiary quality. This could have consisted of affidavits or depositions which created an issue of fact as to whether she had made a prima facie case of age discrimination and whether the reasons offered by the company for her termination were genuine, not pre-textual. *Russell v. Acme–Evans Co.,* 51 F.3d 64, 67 (7th Cir.1995) (citing *Winskunas v. Birnbaum,* 23 F.3d 1264, 1267–68 (7th Cir.1994)).

■ Ms. Hartley has attempted to meet this burden by offering her own affidavit which includes statements directly contrary to her deposition testimony. Where deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken. *Id.* at 68. Moreover, conclusory statements in the plaintiff's affidavit do not create an issue of fact, *Sample v.*

*Aldi Inc.,* 61 F.3d 544, 549 (7th Cir.1995), nor do self-serving assertions without support in the record, *McDonnell v. Cournia,* 990 F.2d 963, 969 (7th Cir.1993).

In view of the standards enunciated above, I deem the following facts to be undisputed. Ms. Hartley was employed by WBI at one of its Milwaukee locations until September 8, 1993, when her employment was terminated. (▲'s Proposed Findings ["P.F."] ¶ 2.) During the period of time relevant to this lawsuit, WBI was a wholly-owned subsidiary of Ameritech Corporation ["Ameritech"] along with Illinois Bell, Inc., Indiana Bell, Inc., Ohio Bell, Inc. and Michigan Bell, Inc. (▲'s P.F. ¶ 3.) Ms. Hartley, whose date of birth is March 2, 1942, was 51 years of age when she was terminated. (▲'s P.F. ¶ 4.)

At the time of her termination, Ms. Hartley held the position of Manager, Remittance Operations, in the Billing Services Department. There were two other Managers, Remittance Operations in the Billing Services Department—Judy Murray and Linda Matthews. (▲'s P.F. ¶ 5.) Ms. Hartley, Ms. Murray and Ms. Matthews were supervised by Brenda Theus and were considered first tier supervisors, or "Level 1 Supervisors, Salary Grade 3." (▲'s P.F. ¶ 5.) Ms. Hartley supervised a group of approximately 15 employees who were responsible for external payment agents in Wisconsin such as banks, credit unions and grocery stores that collected primarily cash payments from individuals on phone bills. (▲'s P.F. ¶ 6.)

Ms. Matthews supervised a group of 25 employees who were responsible for receiving and accounting for tens of thousands of phone bill payments which were remitted by customers on a daily basis through the mail. (▲'s P.F. ¶ 8.) Prior to January 1992, Ms. Murray provided staff support services to Ms. Matthew's group as well as to the entire Remittance Operations Group. (▲'s P.F. ¶ 8; Hartley Aff. ¶ 8.)

On February 22, 1993, Ameritech announced a reorganization of its business structure (termed "Breakthrough") whereby all of the business functions of the state operating companies would be consolidated into 12 new "business units": Ameritech

Consumer Services, Ameritech Small Business Services, Ameritech Enhanced Business Services, Ameritech Custom Business Services, Ameritech Long Distance Services, Ameritech Information Industry Services, Ameritech Telephone Industry Services, Ameritech Pay Phone Services, Ameritech Advertising Services, Ameritech Cellular Services, Ameritech Leasing Services and Ameritech Network Services. (▲'s P.F. ¶¶ 10, 11 & 13.) The number of employees required in each business unit and the types of skills needed to carry out the goals of each business unit were decisions to be made by the management of a given business unit. (▲'s P.F. ¶ 12.)

On March 22, 1993, a communication was issued to all managers, including Ms. Hartley, by Neal P. Kulick, the Director of Breakthrough Staffing, which outlined the process of staffing the new business units. (▲'s P.F. ¶ 14.) Each business unit was to consist of four levels of management beginning with "Tier A"—the most senior management level—through "B", "C" and "D," the most junior level of management. (▲'s P.F. ¶ 15.) The process of staffing the business units would proceed with Tier A selecting Tier B then Tier B selecting Tier C and Tier C selecting Tier D. (▲'s P.F. ¶ 15.)

Mr. Kulick's memorandum of March 22, 1993, explained that

selection into the new units will be ... based upon an assessment of employee qualifications compared to the qualifications and requirements defined for specific positions. In the majority of cases, the positions in the new units at the time of launch will be basically the same or very similar to current positions. Therefore, those now performing the work generally will follow their work into the new units because they possess the skills and experience required....

In cases where there may be fewer positions than employees doing the work in the current companies, the new units, with the assistance of the appropriate individuals in the current Company, will select the most qualified employees for the positions from among those currently doing similar work and from among any other employees that

may be unassigned. Information on employee skills, experience, leadership qualities and performance will be used to make these decisions. In cases where there may be skill shortages, a company wide search for qualified employees will be conducted.

(▲'s P.F. ¶ 17.) The selection process for the management positions in the business units involved submission of a written application and/or resume and a job interview with a more senior manager already selected into the business unit. (▲'s P.F. ¶ 18.) All management personnel had to go through the selection process to get a job in the reorganized company as there was no preselection or preassignment of positions. (▲'s P.F. ¶ 19.)

Mr. Kulick's March 22, 1993, communication also included a "preferencing slip" whereby managers could assert a preference for a particular business unit and/or job. (▲'s P.F. ¶ 20.) The preferencing slips, when completed, were to be forwarded to one of the 12 transition staffing coordinators who were also responsible for answering questions concerning the process of staffing the business units. (▲'s P.F. ¶ 20.) Scott Theis, the transition staffing coordinator for WBI, was never contacted by Ms. Hartley regarding the Breakthrough staffing process. (▲'s P.F. ¶¶ 20 & 22.) Ms. Hartley received and read a copy of Mr. Kulick's memorandum on or about that same date. (▲'s P.F. ¶ 21.) Ms. Hartley did not submit any preferencing slips until the end of July 1993. (▲'s P.F. ¶ 22.)

By memorandum of March 29, 1993, all managers, including Ms. Hartley, were invited to complete and return an "Ameritech Employee Profile Report" which allowed managers to identify their work experiences and skills, education and career preferences. (▲'s P.F. ¶¶ 23 & 24.) Ms. Hartley returned the completed employee profile form and, in early June 1993, she received a copy of her Ameritech Employee Profile. (▲'s P.F. 25.) In the employee profile form, Ms. Hartley had identified her three greatest strengths as "Focused on Customers," "Supports Teamwork" and "Communicates Openly and Effectively." (▲'s P.F. ¶ 26; Hartley Aff. ¶ 15.)

During the mid-to-late summer of 1993, the selection of the Tier D managers had begun. The Tier D selection process required the appropriate Tier C managers to identify candidates to be interviewed based on the following priorities arranged in descending order or priority:

a. managers currently performing the work for the state operating Company;

b. managers who identified the business unit as a preference; and

c. others from elsewhere in Wisconsin Bell or any of its sister state operating companies who are qualified for the position.

(▲'s P.F. ¶ 31.)

The written selection factors that applied in guiding Tier C managers to select Tier D candidates included: (a) position specific skills/knowledge/experience; (b) Breakthrough leadership skills; (c) performance capability; and (d) growth potential (i.e., the ability to change and develop self). (▲'s P.F. ¶ 33.)

The three preferencing slips submitted to Mr. Theis by Ms. Hartley in July 1993 indicated a preference for Cellular Services, Consumer Services and Small Business Services. (▲'s P.F. ¶ 34.) Because Ms. Hartley's preferencing slips were submitted so long after the submission deadline of May 7, 1993, Mr. Theis was unable to route her preferencing slips to the appropriate business units in time for those units properly to consider her for any management openings for which she may have been qualified. (▲'s P.F. ¶ 35.) By late July and early August 1993, the business units had already selected most of the Tier A and Tier B managers. By that time, the majority of Tier C and Tier D managers had already been selected or the candidates for these positions had been identified. (▲'s P.F. ¶ 35.)

On August 2, 1993, Ms. Hartley submitted a cover letter, resume and position description to Brenda Theus. Ms. Hartley requested that she be considered for one of the two Tier D management slots that Ms. Theus had to fill for Remittance Operations, which was now part of the Network Services business unit. (▲'s P.F. ¶ 36.) This position was essentially the same job that Ms. Hartley had been performing at WBI. (▲'s P.F. ¶ 36.) On August 3, 1993, Ms. Hartley submitted a cover letter and resume to Dana Wood asking to be considered for one of the available positions Ms. Wood was filling in the Information Industry Services business unit. (▲'s P.F. ¶ 37; Hartley Aff. ¶ 23.) Ms. Hartley also applied to Nick Vento for a general officer manager job which was classified as a Tier D management position in the Consumer Services business unit on August 6, 1993. (▲'s P.F. ¶ 38.)

Ms. Hartley was interviewed for each of the three positions outlined above in August 1993, but she was not selected to fill any of them. (▲'s P.F. ¶ 39.) Ms. Hartley interviewed with Ms. Wood for the Information Industry Services position and states that she does not know why she was not selected by Ms. Wood for this position. (▲'s P.F. ¶¶ 40 & 41.)

Mary Lynn Ziemer was the manager in Consumer Services who made the hiring decision as to the Tier D position in that unit for which Ms. Hartley applied. (▲'s P.F. ¶ 42.) At the time of her interview, the Consumer Services business unit was attempting to fill 45 Tier D positions while there were more than 45 incumbents—managers who had performed the same job under WBI. (▲'s P.F. ¶ 43.) Ms. Hartley was not one of these incumbents. (▲'s P.F. ¶ 43.)

Ms. Theus was the Tier C manager in Network Services responsible for interviewing and selecting the Tier D managers for the Remittance Operations positions. (▲'s P.F. ¶ 45.) The Remittance Operations jobs were essentially the same as those positions held by Ms. Hartley, Ms. Murray and Ms. Matthews at WBI which Ms. Theus had supervised. (▲'s P.F. ¶ 46.) Only two Remittance Operations manager positions were available to be filled by Ms. Theus. (▲'s P.F. ¶ 46.) Three applicants were interviewed by Ms. Theus for the two Tier D Remittance Operations jobs: Ms. Hartley, Ms. Murray and Ms. Matthews. (▲'s P.F. ¶ 47.)

Ms. Theus was not aware of the ages of the three candidates but believed all three appeared to be in their mid-to-late 40's.

(▲'s P.F. ¶ 48.) Nevertheless, Ms. Theus claims that she did not consider age in making her selection decision. (▲'s P.F. ¶ 48.) At the end of August 1993, Ms. Theus made her decision and selected Ms. Murray and Ms. Matthews for the two Tier D Remittance Operations positions. (▲'s P.F. ¶ 49.) Ms. Theus asserts that she was influenced by the fact that Ms. Murray and Ms. Matthews had better overall skills than Ms. Hartley (▲'s P.F. ¶ 49) and more experience in automated remittance operations and image processing of payment data technology (▲'s P.F. ¶ 51.).

On August 24, 1993, Ameritech announced through an edition of "Ameritech Perspective" which was distributed to all employees, including Ms. Hartley, that it was eliminating 1,200 to 1,500 management positions in the entire five-state area covered by Ameritech. (▲'s P.F. ¶ 52; Hartley Aff. ¶ 31.) In this same edition of Ameritech Perspective, employees were notified that some managers would be asked to leave the same day they are told they were not selected to fill a position in the new business units. (▲'s P.F. ¶ 53.)

Network Services, which performed the billing services for Ameritech, formally commenced operations in early September 1993. (▲'s P.F. ¶ 54; Hartley Aff. ¶ 33.) In the morning of September 8, 1993, Ms. Hartley was called to a meeting with Ms. Theus, Jean Chilka, an Ameritech Human Resources representative, and a representative from an outside company hired by Ameritech to provide outplacement services. (▲'s P.F. ¶ 56.) At this meeting, she was advised by Ms. Theus that she was being separated from the company. (▲'s P.F. ¶ 56.)

## IV. ANALYSIS

A plaintiff may prove age discrimination by direct or circumstantial evidence that age was the cause of the discharge or by the burden-shifting method outlined by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Ms. Hartley acknowledges that she relies on the burden-shifting method as there is no direct or circumstantial evidence of age discrimination. Under this standard,

Ms. Hartley first has the burden of establishing a prima facie case of age discrimination by showing all of the following: (1) that she was in the protected age group of 40 or older; (2) that she was performing according to her employer's legitimate expectations; (3) that she was separated from the company; and (4) that younger similarly situated employees were treated more favorably. *Smith v. Cook County,* 74 F.3d 829, 831 (7th Cir.1996); *Taylor v. Canteen Corp.,* 69 F.3d 773, 780 (7th Cir.1995).

If the plaintiff meets her burden to establish a prima facie case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the termination. *Roper v. Peabody Coal Co.,* 47 F.3d 925, 926 (7th Cir.1995). Where the employer meets its burden of production, the burden then shifts back to the plaintiff to show that the employer's proffered explanation is merely a pretext for age discrimination. *Id.* The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against her based upon her age remains with the plaintiff. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993).

The defendant argues that it is entitled to summary judgment on Ms. Hartley's ADEA claim because she has failed to make a prima facie case of age discrimination and because the evidence demonstrates that she was separated for legitimate, non-discriminatory business reasons.

### A. Failure to Make Out a Prima Facie Case

The defendant does not dispute that the plaintiff has satisfied the first three elements of the prima facie analysis: she is in the protected age group, she generally performed her work satisfactorily at WBI and she was separated from WBI. However, the defendant argues that Ms. Hartley falters at the fourth element insofar as she has failed to allege in the complaint or to present evidence that younger similarly situated employees were treated more favorably.

▌ ·In an effort to present evidence on this issue, Ms. Hartley identifies in her brief seven allegedly younger employees who were treated more favorably as a result of the reduction in force at WBI which led to her termination on September 8, 1993—Judy Murray, John Barbian, Nancy Kruse, Pat Barczak, Joyce Townsend, Lynette Ellington and Jean Simon. Of these seven employees, Ms. Hartley presents evidence demonstrating the age of only one—Ms. Murray who was 45 years on or about September 8, 1993. Furthermore, Ms. Hartley points to no evidence in the record demonstrating that Mr. Barbian, Ms. Kruse, Pat Barczak, Ms. Townsend, Ms. Ellington or Ms. Simon were similarly situated employees. There is no evidence that Ms. Hartley competed with Mr. Barbian, Ms. Kruse, Pat Barczak, Ms. Townsend or Ms. Simon for the same or similar positions during the reorganization. Ms. Hartley's assertion that these individuals had "rankings" below her is not persuasive as she fails to establish the significance of such rankings or to show how, if at all, such rankings related to the selection process utilized by Ameritech during the reduction in force which led to her termination in September 1993. Other than Ms. Hartley's conclusory assertions that these persons "kept their jobs" the record lacks any cogent evidence establishing that these five employees were, in fact, selected for any Ameritech business unit.

▌ With respect to Ms. Ellington, the record reveals that she received one of the 45 available Tier D positions in the Consumer Services business unit for which Ms. Hartley also applied. However, the undisputed evidence establishes that Ms. Ellington was not similarly situated to Ms. Hartley with respect to this position. It is uncontested that Ms. Ellington was an incumbent, and therefore entitled to priority over non-incumbents; Ms. Hartley was not an incumbent for any of the Consumer Services Tier D positions. In addition, Ms. Hartley does not challenge the fact that *more than* 45 incumbents were available for the 45 Tier D positions in the Consumer Services business unit.

▌ Notwithstanding these deficiencies, I find that Ms. Hartley has· presented suffi-cient evidence to create a genuine issue of material fact as to whether Ms. Murray, a younger, similarly situated employee was treated more favorably. The evidence shows that Ms. Murray who was 45 years old as of September 8, 1993, successfully competed for one of the positions that Ms. Hartley sought: one of the two available Tier D Remittance Operations management positions in the Network Services business unit. The undisputed facts reveal that Ms. Hartley and Ms. Murray had both been Remittance Operations managers in Billing Services Department of WBI.

▌ The defendant correctly recognizes that disparity in age within the protected class (over 40 years of age) must be sufficient to create a reasonable inference of age discrimination. However, I cannot say, as the defendant suggests, that the six year age disparity that exists between· Ms. Hartley and Ms. Murray is presumptively insuffi-cient. *See O'Connor v. Consolidated Coin Caterers Corp.*, —— U.S. ——, ——, 116 S.Ct. 1307, —— 134 L.Ed.2d 433 (1996); *Roper*, 47 F.3d at 927.

I conclude that there is sufficient evidence in the record upon which a jury could reason-ably infer that Ms. Murray was selected over Ms. Hartley because of Ms. Hartley's age. Thus, I cannot say that Ms. Hartley has failed to make out a prima facie case of age discrimination under the ADEA.

## B. The Plaintiff Was Separated For Le-gitimate Non–Discriminatory Busi-ness Reasons

WBI contends that it is entitled to sum-mary judgment because the undisputed ma-terial facts show that Ms. Hartley was sepa-rated from the company for legitimate, non-discriminatory· business reasons, and Ms. Hartley has failed to establish that such rea-sons are pretextual. Specifically, the defen-dant points to the following reasons as a basis for Ms. Hartley's separation: (1) her position was eliminated in the context of a massive restructuring; (2) Ms. Hartley de-layed until late July 1993 before submitting preference slips which were used as a tool in selecting employees to fill positions in the

new business units which was too late to allow timely consideration of her preferences by upper-management of those units; (3) Ms. Hartley was not an incumbent in the Consumer Services area where priority was given to the more than 45 incumbents for the 45 management positions in that business unit; and (4) the plaintiff did not receive either of the two Network Services Tier D management positions because the .two successful candidates had broader experience than Ms. Hartley, including experience with automated remittance operations technology.

■■■■■ Because Ms. Hartley has not offered any direct evidence that WBI intended to discriminate against her because of her age, she can avoid summary judgment only by attacking the credibility of the reasons proffered by WBI. *Collier v. Budd Co.*, 66 F.3d 886, 892 (7th Cir.1995). To do this, she must show either: (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate [her] discharge; or (3) that "they [the reasons] were insufficient to motivate [the] discharge." *Id.* at 892 (internal quotations and citations omitted). Moreover, where, as here, several legitimate reasons for the plaintiff's separation from the company have been articulated and supported by evidence, the plaintiff must successfully call into question all of such reasons in order to defeat summary judgment. *Russell*, 51 F.3d at 69. In my opinion, Ms. Hartley has fallen far short of satisfying her burden in this regard.

■■■ In the instant action, Ms. Hartley has offered nothing more than her own conclusory and self-serving evaluations of her skills, abilities, experience and WBI's motivations, without support in the record, to contradict the reasons articulated by the defendant. Such "evidence" is not sufficient to cast doubt on the defendant's motivations. *Id.* ("Evidence required to contradict the employer's evidence is rarely within the competence of the plaintiff to give...."); *Gustovich v. AT & T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir.1992) ("An employee's self-serving statements about his ability ... are insufficient to contradict an employer's negative assessment of that ability....") (ci-

tations omitted); *Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 924 (7th Cir.1988).

■■■ Ms. Hartley also points to the partial transcript of an Ameritech video in which Jim Goetz—a person whose position with Ameritech (if any) is not identified—suggests that certain preferencing slips may have gotten lost. It appears that this information is submitted in an effort to undermine the reasons offered by the defendant for Ms. Hartley's separation. This evidence is of dubious value. The videotape transcript (which is introduced via Attorney Kersten's affidavit) constitutes hearsay. Rule 801, Federal Rules of Evidence. Because the plaintiff does not establish that the evidence falls within one of the exceptions to the hearsay rule, it cannot be considered in resolving the instant summary judgment motion. *See* Rule 56(e), Federal Rules of Civil Procedure. In addition, the plaintiff fails to explain the relevance of Mr. Goetz' statements to her situation.

Accordingly, because Ms. Hartley has failed to present cogent evidence demonstrating that the reasons offered by the defendant for her separation were pretextual, the defendant is entitled to summary judgment on her claim under the ADEA.

## V. PLAINTIFF'S MOTION TO PRECLUDE WITNESSES FROM TESTIFYING AND DEFENDANT'S MOTION TO AMEND WITNESS LIST

In view of my decision to grant the defendant's motion for summary judgment, the jury trial which is scheduled to commence on Monday, June 10; 1996, at 10:00 a.m. will be cancelled. Hence, the plaintiff's motion to preclude certain witnesses from testifying at the trial as well as the defendant's motion to amend its witness list will each be dismissed, as moot.

### ORDER

Therefore, IT IS ORDERED that the plaintiff's "Motion to Strike Defendant's Reply Brief on Summary Judgment" be and hereby is granted to the extent that exhibits B, D, F and G attached to the reply brief be and hereby are stricken; in all other re-

spects, the plaintiff's motion to strike be and hereby is denied.

IT IS ALSO ORDERED that the defendant's motion for summary judgment be and hereby is granted.

IT IS FURTHER ORDERED that the jury trial presently scheduled in this case for Monday, June 10, 1996, at 10:00 a.m. be and hereby is cancelled.

IT IS FURTHER ORDERED that the plaintiff's "Motion to Preclude Previously Undisclosed Witnesses from Testifying at Trial" be and hereby is dismissed, as moot.

IT IS FURTHER ORDERED that the defendant's "Rule 6.07 Motion to Amend Witness List in Defendant's Pretrial Report" be and hereby is dismissed, as moot.

IT IS FURTHER ORDERED that this action be and hereby is dismissed, with prejudice and with costs.