**James A. RICHTER, Plaintiff,**

v.

**REVCO D.S., INC. and Hook–SupeRx, Inc., Defendants.**

**No. IP 95–692–C–B/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 18, 1997.

Wayne O. Adams, Johnson, Smith, Pence, Densborn, Wright & Heath, Indianapolis, IN, for plaintiff.

Kim F. Ebert, Locke, Reynolds, Boyd & Weisell, Indianapolis, IN, for defendants.

BARKER, Chief Judge.

### ENTRY

This matter is before the court on defendants' motion for summary judgment. Also before the court are plaintiff's request for oral argument and defendants' motion to strike Michael Campion as an expert. For the reasons discussed below, plaintiff's request for oral argument is *denied*, defendants' motion for summary judgment is *granted*, and defendants' motion to strike Michael Campion as an expert is *denied as moot*.

## I. BACKGROUND

Defendant Revco Drug Stores, Inc. ("Revco") acquired defendant Hook–SupeRx, Inc. ("HSI") in July 1994. Plaintiff James Richter ("Richter") had worked for HSI and its predecessor Hook Drug Stores ("Hook") for 29 years at the time of the acquisition. Richter claims that HSI and Revco discriminated against him due to his age when Revco decided not to retain him as an employee after the acquisition.[1]

---

1. Because it is undisputed that the decision not to retain Richter was made by Revco employees, defendants understandably question why HSI is a party to this litigation. In an apparent attempt to explain HSI's presence as a defendant in this suit, Richter states that Revco was the "decision

## A. Richter's Employment History

Richter began his employment with Hook as a Management Trainee in 1965. He worked as an Employment Supervisor from 1966 to 1967, as Director of Personnel from 1967 to 1969, and as an Assistant Vice President from 1969 to 1981, when he became Hook's Vice-President of Human Resources. In 1986, HSI was formed through its acquisition of Hook and certain assets of SupeRx Drugs Corporation ("SupeRx").[2] Richter retained his Vice-President position within the Hook Division of HSI,[3] where he reported to Robert Griffith, HSI's Vice President of Human Resources.[4] In 1991, when HSI decided to eliminate Richter's Vice President position, HSI offered and Richter accepted a new position as Director of Human Resources for the Hooks Division. Richter held this position until July 1, 1992, when he was reassigned to the position of Human Resources Manager at the Indianapolis distribution center.[5]

## B. Revco's Acquisition of HSI and Decision to Not Retain Richter.

In early April 1994, the boards of directors of Revco and HSI approved Revco's acquisition of HSI, to be completed on July 14, 1994. Revco determined that it would be beneficial to retain human resources personnel at the Indianapolis Distribution Center and initiated a process of deciding which HSI employees to retain following the acquisition. (Simone Dep. at 9, 80). In May 1994, Revco decided not to retain Richter and proceeded to interview other HSI employees for Richter's position.

Three Revco employees were primarily responsible for deciding not to retain Richter after the acquisition and for selecting his replacement: David Lynn, Revco's Vice President of Distribution; Augustine ("Augie") Simone, Revco's Director of Human Resources for Distribution; and Douglas Coffey, Revco's Senior Vice President of Human Resources. (Lynn Dep. 6–7, 10; Coffey Dep. 6–9; Simone Dep. 6–7; Simone Aff. ¶ 1). Revco admittedly did not engage in a highly formal procedure for determining whether to retain Richter nor did it establish written criteria for the position. It is undisputed that Revco never reviewed Richter's (nor any other candidate's) personnel file or performance evaluations. (Simone Dep. at 68; Lynn Dep. at 31–32; Coffey Dep. at 59). Rather, Lynn delegated the decision to Simone and Coffey, who relied primarily on their own impressions of Richter based upon their personal contacts with him.

In mid-April, Coffey met with HSI officials, including Bob Griffith, at HSI's corporate offices to discuss a number of HSI personnel whom Revco might consider retaining for employment after the acquisition. (Cof-

---

maker by deferral" and the corporate successor of HSI. This might explain why Revco would be liable for a decision actually made by HSI, but does not explain why HSI might be liable for a decision that was undisputably made by Revco. Richter also states, without any further explanation, that both Revco and HSI are subject to liability "under the principles announced by the Seventh Circuit in *Shager v. Upjohn Co.*, 913 F.2d 398 (7th Cir.1990)." (Pltf. Response Brief at 17, n. 6). *Shager*, which discusses the application of agency principles to hold an employer liable for the discriminatory acts of an employee acting within the scope of his authority, provides no principle by which a company which is being acquired by another company can be held liable for the acquiring company's decision not to retain certain employees of the acquired company. We need not resolve this issue on the merits, however, because even if we assume that HSI's fate is somehow tied to Revco's (a curious proposition indeed), we find that Revco is entitled to summary judgment.

**2.** In 1988, HSI also acquired the stock of Brooks Drug, Inc.

**3.** HSI initially operated Hooks, SupeRx, and Brooks as separate divisions.

**4.** Griffith (age 46 on July 14, 1994) was not retained by Revco following the acquisition.

**5.** Defendants have presented evidence indicating that the reason for Richter's reassignment to Manager of Human Resources at the Indianapolis distribution center was that Richter's supervisor, John Winkel, was dissatisfied with Richter's performance as Personnel Manager of the Hooks division. Richter argues that his reassignment came about solely as a result of HSI's decision "to split up the human resources functions for which Richter was then responsible". (Pltf. Brief at 2). As we will explain, any dispute regarding the quality of Richter's pre–1994 work performance is not material to our resolution of the motion for summary judgment.

fey Dep. 43, 44). Coffey asked Griffith to give his personal opinions on various HSI personnel, including Richter, and Griffith told Coffey that Richter "was not a strong performer." (Griffith Dep. 10–12. 14–15, 83–84, 39–40). Coffey inferred from Griffith's comments that Richter was not as actively involved in business as Griffith desired. (Coffey Dep. 41). Coffey also personally met Richter during a visit to the Indianapolis Distribution Center on April 14, 1994. During this visit, Richter gave Coffey a "golf cart tour" of the facility, after which they met in Richter's office. Based upon this initial meeting, Coffey formed several impressions of Richter, primarily that Richter seemed to know very few people in the facility, and that Richter did not seem to be significantly involved in job interviews, employee appraisals or training. (Coffey Dep. at 47–49). Coffey was particularly "surprised and a little struck" that HSI had employed outside trainers to work with the managers in the area of union avoidance, since he had expected that Richter, as Human Resources Manager, would be actively involved in union avoidance activities and training. (Coffey Dep. at 47–48).

On or about April 21, 1994, Lynn, Simone and a group of Revco distribution staff met with HSI distribution management personnel. Simone met with Richter in Richter's office, where they discussed the Indianapolis operation, Richter's work experience, and the Human Resources programs in place in the Indianapolis facility. Simone also met with Richter in a subsequent visit to the Indianapolis facility in mid-May, 1994. Simone later told Coffey that, based upon his conversations with Richter, he viewed Richter as someone who was delegating effectively, but was not dealing hands-on with human resources activities. (Simone Dep. 62–63; Coffey Dep. 62; Lynn Dep. at 23).[6] Coffey agreed with Simone that Richter was not the type of hands-on manager that Revco wanted for the Human Resources Manager position. Coffey and Simone shared their concerns about Richter with Lynn, who agreed that Richter was not the appropriate person for the Human Resources Manager position and that Revco needed someone who would be more actively involved in the human resources functions. (Coffey Dep. at 63–65, 126; Simone Dep. at 46, 50–51, 74; Lynn Dep. at 23). In June 1994, Simone visited the Indianapolis facility for the purpose of advising Richter and Jane Zenner (then, age 30), HSI's transportation manager at the Indianapolis facility, that they would not be retained by Revco following the acquisition. (Simone Dep. at 76, 85, Exh. 3; Def. Supp. Ans. To Pltf's Interrog., # 6).[7]

After Revco decided not to retain Richter, they searched for other available candidates from among HSI employees. Griffith and another HSI official, Winkel, had previously recommended Stan McGrew for the position, and McGrew had expressed interest in the position. Consequently, Coffey, Simone, Lynn, and other Revco staff met with and interviewed McGrew, and ultimately rejected him because they did not like his "communications style," and they believed that he was sarcastic, had a negative attitude, seemed to be more comfortable dealing with management personnel and would not be well-received by warehouse employees. After deciding not to retain McGrew in the Indianapolis Human Resources Manager position, Revco contacted John Kellner, whom Revco had interviewed for another position, and asked him to interview for the Indianapolis Human Resources Manager position. Kellner (age 45) was eventually selected for the position.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for sum-

---

**6.** When Simone asked Richter about award programs, Richter said that Kenneth Schnepp was responsible for safety awards. (Simone Dep. 63, 66). When asked about union avoidance training, Richter said that they contracted with a labor relations consultant for that. (Simone Dep. 63, 66–67). Richter also told Simone that he would need to check with his subordinates to gather associate information and job descriptions. (Simone Dep. 63–65, 106–11).

**7.** Richter already knew of Revco's decision not to retain him, since Michael Jones, HSI Vice President of Distribution at the Indianapolis Distribution Center, had told him of the decision on May 25, 1994. (Richter Dep. at 295).

mary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R. Civ. Pro.*56(c). A genuine issue of material fact exists if there is sufficient evidence for a jury to return a verdict in favor of the non-moving party on the particular issue. *Methodist Medical Center v. American Medical Sec., Inc.*, 38 F.3d 316, 319 (7th Cir.1994). In considering a summary judgment motion, a court must draw all justifiable inferences in the light most favorable to the opposing party, and must resolve any doubt against the moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 366 (7th Cir.1997). While the burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the nonmoving party may not simply rest on the pleadings, but must affirmatively demonstrate by specific factual allegations that a genuine issue of material fact exists for trial. *Billups v. Methodist Hosp. of Chicago*, 922 F.2d 1300, 1302 (7th Cir.1991). "Neither 'the mere existence of some alleged factual dispute between the parties,' nor the demonstration of 'some metaphysical doubt as to the material facts,' will sufficiently demonstrate a genuine issue of material fact. In that regard, the 'mere existence of a scintilla of evidence in support of the plaintiffs position will be insufficient'." *Forman v. Richmond Police Dept.*, 104 F.3d 950, 957 (7th Cir., 1997), *quoting Anderson*, 477 U.S. at 247, 252, 106 S.Ct. at 2510, 2512, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### III. ANALYSIS [8]

■ The Age Discrimination in Employment Act ("ADEA") was enacted in 1967 to eliminate workplace discrimination based upon age. *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 357–58, 115 S.Ct. 879, 884, 130 L.Ed.2d 852 (1995). Under the ADEA, it is illegal for an employer to discharge an employee over forty years old because of that individual's age. 29 U.S.C. §§ 623(a), 631(c). To succeed in an ADEA claim, a plaintiff must establish that he would not have received adverse treatment but for his employer's intentional age-based discrimination. *Konowitz v. Schnadig Corp.*, 965 F.2d 230, 232 (7th Cir.1992).

■ A plaintiff may prove age discrimination either (1) by presenting direct evidence of age discrimination, or (2) by relying on the indirect, "burden-shifting" method of proof outlined in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *Mills v. First Federal Sav. & Loan Ass'n.*, 83 F.3d 833, 840 (7th Cir.1996); *Kralman v. Illinois Dept of Veterans' Affairs*, 23 F.3d 150, 153 (7th Cir. 1994), *cert. denied*, 513 U.S. 948, 115 S.Ct. 359, 130 L.Ed.2d 313 (1994). Because Richter presents no direct evidence of discrimination, we apply the indirect burden-shifting method to analyze his claim.

Under the paradigm established in *McDonnell Douglas* and *Burdine*,

> [i]f the plaintiff succeeds in establishing a *prima facie* case, this creates a rebuttable presumption of discrimination, and the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the employee's discharge. If the employer is successful, the presumption dissolves, and the burden shifts back to the employee to show that the employer's proffered reasons are a pretext for discrimination.

*Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1122 (7th Cir.1994), *quoted in, Mills*, 83 F.3d at 843.

---

**8.** The Court finds that the submissions of the parties adequately address the issues and that oral argument would not be helpful to resolution of the pending motions. Accordingly, plaintiff's request for oral argument is **denied**.

## A. Prima Facie Case

■ In order to establish a prima facie case of age discrimination, Richter must demonstrate that (1) he was a member of the protected class (age 40 or over), (2) he was doing the job well enough to meet his employer's legitimate expectations, (3) he was discharged, and (4) younger, similarly-situated employees were treated more favorably, or he was replaced by someone "substantially younger," although not necessarily outside the protected class. *Denisi v. Dominick's Finer Foods, Inc.*, 99 F.3d 860, 864 (7th Cir.1996), *citing O'Connor v. Consolidated Coin Caterers Corp.*, ─── U.S. ───, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

In *O'Connor* the Supreme Court stated that "the prima facie case requires 'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion ....' ". ─── U.S. at ───, 116 S.Ct. at 1310, *quoting Teamsters v. United States* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). Revco seems to believe that this language in *O'Connor* increased an age-discrimination plaintiff's burden at the prima facie stage, requiring some further showing of discrimination beyond the traditional four elements of a prima facie case. To the contrary, *"O'Connor* and its progeny have relaxed the structure by which a plaintiff must present her case." *Kastel v. Winnetka Bd. of Educ., Dist. 36,* 946 F.Supp. 1329, 1337 (N.D.Ill. 1996). The requirement that a plaintiff present "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion ..." is not a new one; in fact, *O'Connor* borrowed this language from the Supreme Court's 1977 decision in the *Teamsters* case. *O'Connor* did not do away with the traditional four elements of a prima facie case; it simply relaxed the plaintiff's burden with regard to the fourth element, by establishing that plaintiff need not show that he was replaced by someone outside the protected class. *Id.* Recognizing the absurdity of a rule under which an inference of discrimination would arise when a 40–year–old (in the protected class) is replaced by 39–year–old (outside class), but no such inference would arise where a 56–year–old is replaced by a 40–year–old, the Supreme Court encouraged courts to take a more common sense approach in deciding whether a plaintiff has presented sufficient evidence to establish a prima facie case. *Id.*

Under *O'Connor,* an age-discrimination plaintiff can establish a prima facie case by satisfying the first three elements, and by showing that he was replaced by a younger person, so long as the replacement is not "insignificantly younger," as would be the case when a 40–year–old is replaced with a 39–year–old. *Id.* ("[i]n the age-discrimination context, such an inference [of age discrimination] cannot be drawn from the replacement of one worker with another worker insignificantly younger."); *see also Chiaramonte v. Fashion Bed Group, Inc., a Div. Of Leggett & Platt, Inc.* 932 F.Supp. 1080, 1088 (N.D.Ill.1996) (Evidence that the employer chose to retain an arguably similarly-situated co-worker "significantly" and "substantially younger than the plaintiff is ... a ... reliable indicator of age discrimination."), *quoting O'Connor,* ─── U.S. at ───, 116 S.Ct. at 1310; *Teamsters,* 431 U.S. at 358, 97 S.Ct. at 1866.

■ In this case, Richter meets the first three elements of the prima facie case because he was 52, was performing his job satisfactorily[9], and was terminated from em-

---

9. In a footnote, defendants call into question whether Richter has met the second element of the prima facie case. The Seventh Circuit law on this aspect of the prima facie case is clear. At the first stage of the analysis, a "determination that an individual is performing a job well enough to meet an employer's legitimate expectations, when made in the context of a prima facie case, may be based solely upon the employee's testimony concerning his work." *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1114 n. 35 (7th Cir.1992), *quoting Williams v. Williams Elecs., Inc.,* 856 F.2d 920, 923 n. 6 (7th Cir. 1988). In addition to Richter's testimony, there is other evidence in the record tending to show that Richter was performing satisfactorily. (see e.g., Griffith Dep., Exh. 6—"a large part of Jim's effectiveness revolves around his leadership skills"; Simone Dep., at 62—Richter was delegating effectively, but not dealing hands-on ... ). The court finds that Richter has made a sufficient showing that he was performing his job satisfactorily to satisfy the requirements of the prima facie test.

ployment. Defendants argue that the seven-year age difference between Richter (age 52) and his replacement Kellner (age 45) is "insignificant," and that Richter cannot therefore satisfy the requirements of the fourth prong of the prima facie case. In support of their argument, defendants cite *Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1147 (7th Cir. 1994), in which the Seventh Circuit referred to a nine-year age difference between an age discrimination plaintiff and his replacement as a fairly marginal difference" which "weakens" plaintiff's claim. *Rand* which was decided before *O'Connor*, did not hold that this nine-year age difference prevented the plaintiff from establishing a prima facie case. Rather, the Court reasoned that the age difference, coupled with the fact that the defendant both hired the plaintiff at age 47 and fired him at age 49, and the plaintiff's failure to produce specific facts casting doubt on the defendant's stated reasons for its action, made summary judgement appropriate. *Rand*, 42 F.3d at 1147; *but see Futrell v. J.I. Case*, 38 F.3d 342, 348 (7th Cir.1994) (pre-*O'Connor* case holding that a six-year age difference was not so minimal as to be irrelevant as a matter of law). Since the Supreme Court decided *O'Connor*, neither the Supreme Court nor the Seventh Circuit has drawn a clear line between significant and insignificant age differences. However, the District Court for the Eastern District of Wisconsin has held that a six-year age difference is not presumptively insufficient to establish a prima facie case of age discrimination. *Hartley v. Wisconsin Bell, Inc.*, 930 F.Supp. 349, 358 (E.D.Wis.1996). We agree with *Hartley*, and find that the seven-year age difference between Richter and his replacement is not so minimal that it, alone, precludes an inference of age discrimination.

For the reasons discussed above, we find that Richter has satisfied his burden of establishing a prima facie case of age discrimination.[10]

*B. Pretext*

Because the Court finds that Richter has established a prima facie case of age discrimination, the burden of production now shifts to defendants to articulate a legitimate, nondiscriminatory reason for terminating Richter's employment. *Mills*, 83 F.3d at 844. Defendants satisfy their burden by stating that the decision not to retain Richter was based upon:

1) Bob Griffith's comment to Coffey that Richter was "not a strong performer," and Coffey's belief, based upon Griffith's comments, that Richter was not as actively involved in HSI's business as Griffith desired;

2) Revco's belief, based upon Simone's and Coffey's personal contact with Richter, that Richter tended to delegate important Human Resources functions and did not have the desired quality of a "hands-on" manager; and

3) Revco's belief, based upon Simone's and Coffey's personal contact with Richter, that Richter was not sufficiently involved in union avoidance and labor relations functions.

Once the defendant has satisfied this burden of production, the presumption of discrimination established with the prima facie case dissolves, and the burden shifts back to the plaintiff to show that the defendant's proffered reasons are a pretext for age discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 2749,

---

**10.** Defendants also contend that Richter has failed to establish a prima facie case because, at the time of the decision not to retain Richter, the decision-makers, Simone, Coffey, and Lynn, were ages 60, 53 and 46 years old, respectively. Each of the cases cited by defendants in support of this argument actually held or assumed that the plaintiff had established a prima facie case, and considered the age of decision-makers as relevant factors in discussions of the issue of pretext, not the prima facie case. *See, Elrod v. Sears Roebuck & Co.*, 939 F.2d 1466, (11th Cir.

1991); *Weihaupt v. American Medical Ass'n*, 874 F.2d 419 (7th Cir.1989); *LeBlanc v. Great American Ins. Co.*, 6 F.3d 836 (1st Cir.1993), *cert denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). Therefore, we conclude that, while the respective ages of Simone, Coffey and Lynn might, in the final analysis, be relevant to a determination of whether Richter can avoid summary judgment, they do not prevent him from establishing a prima facie case of age discrimination.

125 L.Ed.2d 407 (1993); *Mills,* 83 F.3d at 845.

■ "Pretext means more than a mistake on the part of the employer, pretext means a lie, specifically a phony reason for some action." *Wolf v. Buss (America) Inc.,* 77 F.3d 914, 919 (7th Cir., 1996), *reh'g denied, cert. denied,* — U.S. —, 117 S.Ct. 175, 136 L.Ed.2d 116 (1996); *Mills,* 83 F.3d at 845. Richter can prove that Revco's proffered reasons for its decision to terminate his employment are pretextual "by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Rand,* 42 F.3d at 1145, *citing Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1039 (7th Cir.1993); *Kralman,* 23 F.3d at 156. In attempting to do so, Richter "must *specifically* refute the facts which allegedly support the employer's proffered reasons." *Mills,* 83 F.3d at 845, *quoting Collier v. Budd Co.,* 66 F.3d 886, 893 (7th Cir.1995) (emphasis added in *Mills*). "The issue of pretext does not address the correctness or desirability of reasons offered for employment decisions. Rather, it addresses the issue of whether the employer honestly believes in the reasons it offers." *McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 373 (7th Cir.1992); *Wolf,* 77 F.3d at 919.

Richter attempts to satisfy his burden by showing both that Revco's proffered reasons are unworthy of credence and that age bias more likely motivated its decision not to retain him. For the reasons discussed below, we conclude that Richter has failed to produce *specific evidence* that either casts doubt on Revco's stated reasons for its decision or could persuade a reasonable jury that age

bias more likely motivated the decision. *See Rand,* 42 F.3d at 1147.

### 1. After-acquired Evidence

■ Revco includes in its statement of facts numerous facts relating to Richter's pre–1994 job performance, facts which Lynn, Simone and Coffey admittedly did not rely upon or even possess at the time they made the challenged decision. Revco asserts that this evidence is admissible to provide additional support for the other evidence offered in support of its stated reasons for the decision. Richter correctly points out that Revco cannot use such "after-acquired evidence" to establish or support its stated legitimate nondiscriminatory reasons for the decision. *McKennon,* 513 U.S at 360, 115 S.Ct. at 885 ("The employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason."). Nor is the after-acquired evidence helpful to Revco, for if Revco's asserted reasons are supported by facts known to the decision-makers at the time of their decision, there is no need for Revco to further bolster its case with after-acquired evidence. Conversely, if Richter successfully shows that Revco's asserted reasons were not honestly held, then no amount of after-acquired evidence can save Revco's motion for summary judgment.

■ Revco also attempts to use comparisons of Richter's and Kellner's qualifications to lend support to its assertions that Richter lacked the qualities Revco sought in a Human Resources Manager. It is undisputed that Revco decided not to retain Richter before it even considered other candidates, including Kellner.[11] Therefore, comparisons of Richter's qualifications with those of other candidates could not have served as the basis for Revco's decision not to retain Richter.[12]

11. The fact that Revco first decided whether to retain Richter before considering other candidates for his position does not, as plaintiff contends, support an inference of discrimination. Richter was the incumbent Human Resources Manager at the Indianapolis Distribution Center, and it was thus entirely logical and legitimate for Revco to first consider maintaining the status quo by retaining Richter before conducting a search for other possible candidates.

12. Revco cites the Sixth Circuit's opinion in *Cesaro v. Lakeville Community School Dist.,* 953 F.2d 252 (6th Cir.1992), *cert. denied* 506 U.S. 867, 113 S.Ct. 195, 121 L.Ed.2d 138 (1992) for the proposition that a replacement's qualifications are relevant even when the plaintiff is rejected before the replacement was considered. *Cesaro* simply does not support Revco's argument. In *Cesaro,* the defendant school corporation decided to open to the public the application process for a newly created "Director of Special Education" position, and considered outside ap-

■ For the reasons discussed above, we agree with Richter that neither his pre–1994 work performance nor comparisons of his qualifications with those of Kellner could have served as the basis for Revco's decision not to retain Richter. Therefore, we will not consider this after-acquired evidence as support for Revco's asserted legitimate nondiscriminatory reasons. The fact that Revco tries to use after-acquired evidence to bolster its proof does not, however, show that Revco's asserted reasons are pretextual. This is not a case where an employer "created a catalogue of [plaintiffs] shortcomings after he fired [plaintiff] and then ... tried to make it seem as if he had kept the notes contemporaneously." *Futrell,* 38 F.3d at 349. Unlike the defendant in *Futrell,* Revco does not contend that the after-acquired evidence was the basis for its decision. For the reasons discussed above, we find that Revco's reference to after-acquired evidence does not support its asserted legitimate non-discriminatory reasons for the challenged decision, nor does it establish that those reasons are pretextual.

Richter's remaining pretext arguments focus primarily on perceived deficiencies in Revco's decision-making process and the wisdom of Revco's criteria and its ultimate decision, evidence which does not go to the fundamental issue of the honesty of Revco's asserted reasons. *McCoy,* 957 F.2d at 373. Specifically, Richter contends that Revco's asserted reasons are unworthy of credence because (1) Revco did not actually rely on Bob Griffith's negative remarks, (2) Revco's decision-makers had no basis for concluding that Richter was not a "hands-on" manager, and (3) Revco did not really place importance on participation in union avoidance. Richter also asserts that the subjective nature of Revco's decision-making process and certain allegedly ageist statements made by Simone and Griffith show that age bias than likely motivated Revco's decision. We will address each of these arguments in turn.

*2. Reliance on Griffith's Negative Remarks*

Richter cites portions of Coffey's deposition testimony in an attempt to show that Coffey relied solely on his own contacts with Richter in forming his opinions, and that he did not, therefore, rely on Griffith's negative remarks. However, the cited portions of Coffey's deposition establish only that Coffey's perception that Richter was "not very involved in day-to-day operations" was based upon Coffey's April 14, 1994, meeting with Richter. (Coffey Dep. At 106–07). Richter has provided no evidence tending to show that Griffith's remarks did not contribute to Coffey's overall impression of Richter. Furthermore, whether Coffey shared Griffith's remarks with Simone and Lynn is irrelevant; it is enough that Coffey's impression of Richter was influenced by Griffith's negative remarks. Therefore, we find that Richter has failed to show that Revco's asserted reliance on Griffith's negative remarks is pretextual.

*3. Revco's Belief That Richter Tended To Delegate Important Functions And Was Not A "Hands-on" Manager.*

■ Richter attempts to show that Revco's asserted belief that Richter was not a "hands-on" manager is unworthy of credence by asserting that Revco did not have a sufficient basis for reaching this conclusion. Richter essentially challenges Revco's reasoning by asking "how could they know?". The undisputed evidence shows that Revco did not, as Richter would have us believe, reach this conclusion out of thin air. Simone, Coffey and Lynn each met with Richter in visits to the Indianapolis facility, and based upon their personal observations and Richter's responses to their questions (and in Coffey's case, Griffith's negative remarks), concluded that he was not the type of "hands-on" manager they desired. Richter argues that Revco should have asked more questions and talked to more people to make sure that this conclusion was accurate. However, in

plicants *along with* the plaintiff who was a special education teacher in the school system. The plaintiff was selected from among all applicants as a finalist, but ultimately another, more qualified, applicant was chosen. *Id.* at 254. There-

fore, in *Cesaro,* comparison of the plaintiff's qualifications with those of the person ultimately selected for the position in question was the primary basis for the defendant school corporation's decision not to hire the plaintiff.

determining whether Revco's stated reasons are pretextual, our concern is " 'whether the employer honestly believes in the reasons it offers,' not whether it made a bad decision." *Rand*, 42 F.3d at 1145, *quoting Kralman*, 23 F.3d at 156–57. Richter cannot show pretext merely by alleging that Revco came to its conclusions too hastily. *Rand*, 42 F.3d at 1145 ("If Luizzi consults with only a few key people and concludes that Rand must be fired, that is enough."); *Huff v. UARCO, Inc.*, 925 F.Supp. 550, 558–59 (N.D.Ill.1996) (It is not the Court's function to question the wisdom or accuracy of employer's decision-making process; "rather the relevant inquiry is whether the decision maker ... 'honestly believed in the reasons' that he offered."), *quoting McCoy*, 957 F.2d at 373.[13]

### 4. Revco's Belief That Richter Was Not Sufficiently Involved In Union Avoidance Activities And Training

■ Richter does not assert that he was actively involved in union avoidance activities or that Revco did not honestly believe that he was not. Rather, Richter claims that Revco did not actually consider active involvement in union avoidance to be an important function for the Human Resources Manager position. Richter, however, presents absolutely no specific facts that cast doubt on Revco's assertion that this was an important factor in its decision. Instead, Richter once again suggests that Revco should have asked more questions about union avoidance if they really cared about it. Richter also indicates his disagreement with Revco's perspective on union avoidance, asserting that it is "counter-intuitive" that anyone would view the delegation of union avoidance activities to an outside firm as a deficiency. For reasons we have already discussed, Richter cannot show pretext merely by arguing that Revco made a bad business decision.

### 5. Subjective Decision–Making Process

■ Richter argues that age bias more likely motivated Revco's decision, because Revco made its decision not to retain him by way of an informal, subjective decision-making process which, according to Richter, sets the stage for age stereotyping to influence the decision. Richter focuses primarily on what Revco did not do or should have done, arguing that Revco's decision-making process was faulty because the Revco decision-makers did not review his personnel file, ask for a resume, conduct a more formal interview, or ask more questions of his supervisors.

■ Richter has shown that Revco's decision-making process was "subjective-at worst, that it [was] arbitrary and unreliable." *Vitug v. Multistate Tax Com'n*, 88 F.3d 506, 514 (7th Cir.1996). "But arbitrariness alone does not amount to discrimination. It is not enough for a plaintiff to demonstrate that an employment practice could theoretically be used to discriminate—[the ADEA] does not forbid subjective selection processes." *Id.* (Title VII case). *See also Heerdink v. Amoco Oil Co.*, 919 F.2d 1256, 1261 (7th Cir., 1990) ("It is not appropriate for the courts to fetter management's discretion by substituting their own judgment as to proper hiring practices."), *reh'g denied* (1991), *cert denied* 501 U.S. 1217, 111 S.Ct. 2826, 115 L.Ed.2d 996 (1991); *Weihaupt v. American Medical Ass'n*, 874 F.2d 419, 429 (7th Cir.1989) ("the mere fact that their beliefs were based on subjective factors fails to establish that their assessment of Weihaupt's skills were [sic] made in bad faith."); *Dorsch v. L.B. Foster Co.*, 782 F.2d 1421, 1427 (7th Cir.1986) ("A subjective qualification assessment does not convert an otherwise legitimate reason into an illegitimate one."); *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 578, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978) (court cannot require businesses to adopt what it perceives

---

**13.** Richter also alleges that Simone's belief that Richter did not spend sufficient time on the ware-house floor is disingenuous because Simone was aware of the fact that Richter spent eight to ten weeks on the ware-house floor when he began his job as Indianapolis Human Resources Manager in 1992. Once again, Richter's challenge goes to the accuracy, not the honesty of Simone's stated belief. Furthermore, that Richter spent a couple of months on the ware-house floor in 1992 in order to familiarize himself with a new job environment has little bearing on whether Richter spent time on the ware-house

to be the "best" hiring procedures).[14]

■ Even if we were to accept Richter's contention that Revco's subjective decision-making practice could theoretically allow age stereotyping to influence decisions, Richter has presented no evidence tending to show that this is in fact what happened. Richter claims that certain statements made about him by Simone and Griffith show that Simone and Griffith held negative stereotypes about older workers that may have impermissibly influenced the decision not to retain him. The evidence reflects that Simone expressed to Lynn concerns that Richter had a "low energy level," was not hands-on and was "resistant to change," (Lynn Dep. At 24), and that, in a 1988 evaluation of Richter, Griffith also remarked that Richter was "resistant to change." (Griffith Dep. At 58–62). Richter claims that "low energy level" and "resistant to change" are "prime stereotypes about aging workers."

■ The reasonableness of an inference of discrimination based upon allegedly age-biased statements "depend[s] on the nature of the allegedly discriminatory remarks, their relationship to the employment decision in question, the nature of the stated reason for the employer's action, and the existence of other evidence calling that reason into doubt." *See, Fuka v. Thomson Consumer*

floor or took a "hands-on" approach in carrying out the function of Human Resources Manager.

14. In support of this argument, Richter offers the affidavit of Dr. Michael Campion, in which Dr. Campion offers his opinion that an informal subjective decision-making process such as the one used by Revco in this case provides a "perfect atmosphere" for age stereotyping. Defendants have moved to strike Dr. Campion's affidavit on the grounds that 1) Dr. Campion discarded evidence relevant to his opinions in this case; 2) he is not qualified to render certain expert opinions; 3) his opinions are not based on scientifically reliable evidence; and 4) his opinions will not assist the trier of fact. (See Defendants' Motion to Strike). Because we follow the clear direction of the Seventh Circuit in concluding that the subjective nature of Revco's decision-making process is not sufficient to create an inference that age bias more likely motivated Revco's decision not to retain Richter, we need not address defendants' motion to strike on the merits. Accordingly, defendants' Motion to Strike Dr. Campion's affidavit is **denied as moot**.

*Electronics,* 82 F.3d 1397, 1406 (7th Cir. 1996). Statements that an employee is "resistant to change" and has a "low energy level," standing alone, are insufficient to raise an inference of age discrimination.[15] *Fuka,* 82 F.3d at 1403, 1406 (no reasonable trier of fact could draw an inference of discrimination from evidence that plaintiff's supervisor stated that he preferred "young people fresh out of college," and commented: "No, I don't want older people, we want young people we can mold," and "Looking at the graduation date, this one has to be at least 50 or more. We'll pass on that one."); *Mills,* 83 F.3d at 841 ("may not be able to keep up with the regulations" is not necessarily an age-related comment); *Chiaramonte,* 932 F.Supp. at 1091 (statement that employee would be unable to "crawl through the dirt while rebuilding the company," and didn't possess "team synergy" are not evidence of age bias).

■ In the final analysis, Richter can only survive summary judgment if "the evidence, interpreted favorably to the plaintiff, could persuade a *reasonable* jury that the employer had discriminated against the plaintiff." *Rand,* 42 F.3d at 1146–47, *quoting Palucki v. Sears Roebuck & Co.,* 879 F.2d 1568, 1570 (7th Cir.1989) (emphasis added in *Rand* ).[16] We believe that the evidence in

15. Griffith's comment that Richter was "resistant to change" was made in an employment review in 1988, and had no relation to Revco's May 1994 decision not to retain Richter. Furthermore, Revco has provided evidence of the context in which Griffith's comment was made, which removes any possible inference that the statement reflected age bias. Griffith's statement in the 1988 employment review referred to his perception that Richter frequently would not implement company decisions or changes with which he disagreed. For example, when HSI was trying to implement a new pension plan, Richter indicated in meetings that he did not support the plan and wanted to slow down the process. (Griffith Dep. 58–62).

16. Contrary to Richter's belief we do not apply a "pretext-plus" standard by requiring that the evidence be sufficient to persuade a reasonable jury that the employer's action was based upon discrimination. The standard which we apply, as set forth in *Rand,* does not require a plaintiff who has successfully proven pretext to produce any further evidence in order to avoid summary judgment. Rather, the *Rand* standard allows a plaintiff who has failed to show pretext to still avoid

this case simply cannot support an inference of discrimination. The fact that Revco's decision-makers were themselves 46, 53 and 60 years old, respectively, at the time of the decision, while it does not prevent Richter from establishing a prima facie case, is still significant—particularly in light of the fact that Richter's case is built more on speculation than on factual evidence. *See Mills,* 83 F.3d at 842 (finding it "significant, though perhaps not dispositive" that a person to whom plaintiff attributed ageist comments was himself 55 years old, and that the other decision-makers were 55 and 70 years old); *Weihaupt,* 874 F.2d at 429 (finding it "highly unlikely" that the recommendations of two people approximately the same age as plaintiff were based on age.); *Walker v. Southern Holdings, Inc.,* 934 F.Supp. 197, 200 (M.D.La.1996) (the fact that decision-makers were also members of the protected class enhances inference that same actors who hired plaintiff did not fire him because of his age). Finally, the evidence shows that, of the twenty-one Human Resources managers or officers employed by HSI at the time of the acquisition, only three were retained by Revco after the acquisition. Of the remaining 18 who were not retained by Revco, all but one were younger than Richter, and nine were under the age of 40.[17] (Ritter Aff. ¶ 5, Exh. A). *See Testerman v. EDS Technical Products Corp.,* 98 F.3d 297, 304–05 (7th Cir.1996) (finding it "highly relevant" that an employer spared employees in their 50s but discharged employees in their 40s).

### IV. CONCLUSION

For the reasons stated above, we conclude that Richter has failed to show that defendants' stated reasons for the decision not to retain Richter following Revco's acquisition of HSI were pretext for discrimination. The totality of the evidence supports Revco's explanation that it honestly believed that Richter simply did not approach the job of Human Resources Manager in the active, hands-on manner which Revco desired. Finally, the fact that Revco's decision-makers were themselves 46, 53 and 60 years of age at the time of the decision and that Richter was one of eighteen out of twenty-one Human Resources Managers or Officers who were not retained, most of whom were younger than Richter, are, we believe highly indicative that Revco did not discriminate against Richter because of his age. Accordingly, we **grant** defendants' motion for summary judgment.

summary judgment if the Court determines that the evidence presented could persuade a reasonable jury that the employer discriminated against the plaintiff. *Rand,* 42 F.3d at 1146–47.

17. The three Human Resources Managers or Officers who were retained by Revco were, respectively, 30, 44 and 45 years old. The seventeen Human Resources Managers or Officers not retained, excluding Richter, were, respectively, 35, 46, 30, 31, 33, 31, 29, 28, 42, 45, 41, 39, 44, 60, 43, 32, and 45 years old. (Ritter Aff., Exh. A).